511 P.2d 696

Beatrice S. **GOLDMAN**, a widow, Petitioner,

v.

The **INDUSTRIAL COMMISSION** of Arizona, Respondent,

Pemco Electric Company, Inc., Respondent Employer,

Allied Mutual Insurance Company, Respondent Carrier.

No. I CA–IC 815.

Court of Appeals of Arizona, Division 1, Department A.

July 10, 1973.

Rehearing Denied Aug. 21, 1973.

Review Denied Oct. 2, 1973.

R. Kelly Hocker, Tempe, for petitioner.

William C. Wahl, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Lewis & Roca, Phoenix by John P. Frank, D. W. Grainger, John A. Miller, David L. Cocanower and William C. Lewis, Jr., Phoenix, for respondent employer and respondent carrier.

STEVENS, Judge.

On and prior to 28 August 1970 George G. Goldman had a large malignant tumor "in the lower pole of the right kidney * * * that had displaced the lower half, the lower pole, * * * of that organ * * *." [A quotation from the testimony of Melvin L. Sommer, M.D., a pathologist.] Mr. Goldman was a stocky, powerful, active man in his 49th year and he was not aware of this condition.

On the 28th day of August, in the course of his employment, he fell, taking the major impact of the fall in his left chest. He immediately experienced shortness of breath and exhibited other symptoms. He managed to drive his truck to his home. He was hospitalized on the next day and departed this life in the hospital on 14 September 1970. Compensation was paid for the period of hospitalization.

The petitioner herein is Mr. Goldman's widow and the mother of his two minor children. The petitioner filed a claim for death benefits which was resolved against her and the matter has been brought before this Court for review.

Dr. Sommer and Thomas B. Jarvis, M. D., a pathologist, jointly performed an autopsy. The heart appeared normal. The cause of death was the virtual occlusion

(stopping up) of the right and left branch of the pulmonary artery. The source of the material which caused this result was attributed to the kidney tumor.

At The Industrial Commission hearing there was extensive technical medical testimony by Dr. Sommer, by Dr. Jarvis and by Joe C. Ehrlich, M.D., a specialist in the field of cardiovascular diseases.

Dr. Sommer expressed the opinion that there was a direct causal relationship between the accident of the 28th and the buildup of the fatal occlusion of the pulmonary artery. He expressed the opinion that while the malignant kidney tumor would have inevitably caused Mr. Goldman's death at some indefinite future date, the accident hastened his death.

Dr. Jarvis agreed with Dr. Sommer's physical professional findings in the performance of the autopsy. Dr. Jarvis expressed the opinion that there was no causal relationship between the accident of the 28th and Mr. Goldman's death. Dr. Jarvis expressly disagreed with Dr. Sommer's opinion as to the causal relationship between the accident and the cause of death and the hastening of Mr. Goldman's demise.

Dr. Ehrlich studied the hospital records and the protocol reports of both Dr. Sommer and Dr. Jarvis. He heard at least portions of the testimony of these specialists in pathology. Dr. Ehrlich also expressed the opinion that there was an absence of a causal relationship between the accident of 28 August and Mr. Goldman's death on 14 September. In his opinion the accident did not hasten Mr. Goldman's death.

The hearing officer found the presence of a conflict in the medical evidence. He resolved that conflict adversely to the claim of the petitioner. On review, The Industrial Commission affirmed the hearing officer. Our review of the record convinces us that there is substantial evidence upon which to reject the claim.

The award is affirmed.

DONOFRIO, P. J. and OGG, J., concur.